IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

AUDREY LYNNE SANFORD, )
)
                        Plaintiff, )
)
vs. )
)
ANDREW M. SAUL, Commissioner, Social )
Security Administration, )
) No. 3:20-cv-0075-HRH
                        Defendant. )
_____)

O R D E R

This is an action for judicial review of the denial of disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Plaintiff Audrey Lynne Sanford has timely filed her opening brief[1] as well as her revised opening brief.[2] Defendant Andrew M. Saul has timely responded.[3] Oral argument was not requested and is not deemed necessary.

---

[1]Docket No. 16.

[2]Docket No. 24.

[3]Docket No. 25.

Procedural Background

On May 12, 2017, plaintiff filed an application for disability benefits under Title XVI, alleging that she became disabled on June 17, 2007.[4] However, in Title XVI cases such as this one, onset of disability is generally "'established as of the date of filing provided the individual was disabled on that date[.]'" Bjork v. Colvin, Case No. CV 15-362-TUC-LAB, 2016 WL 3640251, at *5 (D. Ariz. July 6, 2016) (quoting SSR 83-20). Plaintiff alleges that she is disabled due to arthritis, sleep apnea, ankles/feet hurt, problems with knees/legs, clinical depression, shortness of breath, loss of balance, and inability to stand or sit for prolonged periods. Plaintiff's application was denied initially and on reconsideration. After an administrative hearing on February 19, 2019, an administrative law judge (ALJ) denied plaintiff's application. On January 27, 2020, the Appeals Council denied plaintiff's request for review of the ALJ's unfavorable decision, thereby making the ALJ's March 29, 2019 decision the final decision of the Commissioner. On March 30, 2020, plaintiff commenced this action for judicial review of the Commissioner's final decision.

General Background

Plaintiff was born on March 7, 1956. She was 61 years old at the time she filed her application for benefits. Plaintiff has a high school education. Plaintiff's past relevant work includes work as a microfilm scanner and a newspaper carrier.

---

[4]Admin. Rec. at 130.

## The ALJ's Decision

The ALJ first noted that plaintiff had "submitted or informed [him] about additional written evidence less than five days before the scheduled hearing date."[5] The ALJ

> decline[d] to admit this evidence because the requirements of 20 CFR 416.1435(b) are not met as there is no evidence that our action misled you; you had a limitation that prevented you from informing us about or submitting the evidence earlier; [or that] some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier.[6]

The ALJ next applied the five-step sequential analysis used to determine whether an individual is disabled.[7]

---

[5]Admin. Rec. at 11.

[6]Admin. Rec. at 11.

[7]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . her

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since May 12, 2017, the application date. . . ."[8]

At step two, the ALJ found that plaintiff had "the following severe impairments: morbid obesity and osteoarthropathy. . . ."[9] The ALJ found plaintiff's obstructive sleep apnea to be "a non-medically determinable impairment."[10] The ALJ found plaintiff's mood disorder/depression nonsevere "[b]ecause the claimant's depression causes no more than mild restriction or difficulties in the four broad functional areas[.]"[11] The ALJ also noted that "[t]he record shows that the claimant has a history of alcohol abuse" but he "determined that claimant's alcohol use disorder is not a contributing factor material to the determination of disability."[12]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments

---

[7](...continued)
    to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[8]Admin. Rec. at 13.

[9]Admin. Rec. at 13.

[10]Admin. Rec. at 14.

[11]Admin. Rec. at 14.

[12]Admin. Rec. at 15.

-4-

in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[13] The ALJ considered Listing 1.02 (major dysfunction of a joint).[14]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except sit/stand option allowing individual to alternate sitting and standing positions throughout the day without going off task; frequent pushing and pulling with the upper extremities bilaterally; frequent balancing; occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; occasional overhead reaching bilaterally; other reaching frequent bilaterally; occasional exposure to moving or hazardous machinery; and no exposure to unprotected heights.[[15]]

The ALJ discounted plaintiff's pain and symptom statements because "they are inconsistent or not well supported by the record" and because she had "not generally received the type of medical treatment one would expect for a totally disabled individual. . . ."[16]

The ALJ found the opinion of Dr. Lebeau, a medical expert who testified at the

---

[13]Admin. Rec. at 15.

[14]Admin. Rec. at 15.

[15]Admin. Rec. at 15.

[16]Admin. Rec. at 17.

administrative hearing, persuasive.[17] The ALJ also found the opinion of Dr. Lucas, a chiropractor who briefly treated plaintiff, persuasive.[18]

At step four, the ALJ found that plaintiff was "capable of performing [her] past relevant work as a Scanner."[19]

Thus, the ALJ found that plaintiff had "not been under a disability, as defined in the Social Security Act, since May 12, 2017, the date the application was filed. . . ."[20]

## Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole,

---

[17]Admin. Rec. at 17.

[18]Admin. Rec. at 18.

[19]Admin. Rec. at 18.

[20]Admin. Rec. at 19.

weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff first argues that the ALJ erred in finding that she retained the functional capacity for occasionally stooping.[21] Plaintiff argues that this finding was not supported by substantial evidence. Dr. Lebeau opined that plaintiff could occasionally stoop,[22] but plaintiff argues that his testimony is not sufficient to contradict her statements, that by implication, preclude stooping. In particular, plaintiff cites to a statement she wrote on her request to the Appeals Council to review the ALJ's decision. In that request, plaintiff wrote: "I can not stand, stoop, lift or do what they said I can do. Which was scanning. I weigh 322 lbs. And if I am on the ground I can't even get up."[23] Plaintiff argues that Dr. Lebeau did not explain how she could engage in stooping occasionally even though he opined that she

---

[21]Admin. Rec. at 15.

[22]Admin. Rec. at 34.

[23]Admin. Rec. at 128.

was very limited in her ability to stand and walk because of her weight.[24] Thus, plaintiff argues that Dr. Lebeau's opinion is not substantial evidence supporting the ALJ's finding that she could occasionally stoop.

This argument, to a large extent, depends on plaintiff's statements about her limitations, but, as plaintiff acknowledges, the ALJ discounted her pain and symptom statements. Plaintiff argues, in a somewhat conclusory fashion, that the ALJ improperly discounted her statements.

"'[W]hen a claimant presents objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [the claimant] alleged,'" the ALJ is required

> to determine the extent to which the claimant's statements regarding the intensity, persistence, and limiting effects of his or her subjective symptoms . . . are consistent with the record evidence as a whole and, consequently, whether any of the individual's symptom-related functional limitations and restrictions are likely to reduce the claimant's capacity to perform work-related activities.

Lourdes C. v. Saul, Case No. 8:19-cv-01531-JC, 2020 WL 2733666, at *3 (C.D. Cal. May 25, 2020) (quoting 20 C.F.R. §§ 404.1529(a), (c)(4)). "When an individual's subjective statements are inconsistent with other evidence in the record, an ALJ may give less weight to such statements and, in turn, find that the individual's symptoms are less likely to reduce the claimant's capacity to perform work-related activities." Id. "In such cases, when there

---

[24]Admin. Rec. at 33.

is no affirmative finding of malingering, an ALJ may 'reject' or give less weight to the individual's subjective statements 'only by providing specific, clear, and convincing reasons for doing so.'" Id. (quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015)). "This requirement is very difficult to satisfy." Id.

The ALJ discounted plaintiff's pain and symptom statements because "they are inconsistent or not well supported by the record" and because plaintiff had "not generally received the type of medical treatment one would expect for a totally disabled individual. . . ."[25] These were clear and convincing reasons for the ALJ to discount plaintiff's pain and symptom statements, including her statement that she is unable to stoop. The medical evidence of record, which is very limited in this case, is inconsistent with plaintiff's statements, in large part because physical examinations did not document physical abnormalities other than her obesity.[26] And, plaintiff's medical records show only conservative treatment,[27] which is not the type of treatment that one would expect for a totally disabled person.

---

[25]Admin. Rec. at 17.

[26]See, e.g., Admin. Rec. at 239 (September 29, 2017 physical exam unremarkable); Admin. Rec. at 241 (April 16, 2016 physical exam unremarkable); Admin. Rec. at 243 (May 2, 2017 physical exam unremarkable); Admin. Rec. 245 (June 22, 2017 physical exam unremarkable).

[27]Admin. Rec. at 214, 229, 241.

But, even if the ALJ erred in finding that plaintiff could occasionally stoop, this error was harmless. An error is harmless if it "was inconsequential to the ultimate nondisability determination." Stout, 454 F.3d at 1055.

As plaintiff points out, light work generally requires a "worker to [be] able to do occasional bending of the stooping type[.]" SSR 83-14. Thus, "a limitation to rare stooping could conceivably rule out light work[.]" Gary G. v. Comm'r of Soc. Sec., Case No. C18-5696 BAT, 2019 WL 1499678, at *2 (W.D. Wash. April 5, 2019) (emphasis added). However, in this case, an inability to stoop would not rule out the light work in question. At step four, the ALJ found that plaintiff could perform her past relevant work as a scanner, a job that does not require stooping. The DOT listing for a scanner, DOT 976.385-010, specifically states that the job does not require stooping. See 1991 WL 688600. Thus, any error as to plaintiff's ability to stoop was harmless.

Plaintiff next argues that the ALJ erred in finding that she could perform light work because Dr. Lebeau, on whose opinion the RFC was largely based, opined that she had standing and walking limitations that would preclude light work.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

-10-

20 C.F.R. § 416.967(b). "'[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday.'" Osborn v. Colvin, 104 F. Supp. 3d 1104, 1117 (D. Or. 2015) (quoting SSR 83-10).

Dr. Lebeau opined that plaintiff could only walk 15 minutes at a time for "a total of an hour in the course of a workday" and that she could stand for no more than one-half hour at a time for a total of "two hours in the course of a workday."[28] In other words, Dr. Lebeau opined that plaintiff did not have the functional capacity to do a job that required 6 hours of standing and/or walking during the course of an 8-hour workday. Plaintiff argues that the ALJ did not explain how he translated Dr. Lebeau's opinions as to her ability to stand and walk into an ability to do light work. Thus, she argues that the ALJ erred in finding that she had the residual functional capacity to do light work.

As defendant is quick to point, the ALJ did not find that plaintiff could do a full range of light work. Rather, the ALJ found that plaintiff could perform "a reduced light level" of work.[29] More specifically, the ALJ found that plaintiff could perform light work with a sit/stand option. But absent from the ALJ's RFC is any limitation as to walking, despite the only medical opinions in the record both including a walking limitation.

As set out above, Dr. Lebeau limited plaintiff to one hour of walking per day. Dr. Lucas stated that plaintiff "did have difficulties walking when I saw her due to knee pain.

---

[28]Admin. Rec. at 33.

[29]Admin. Rec. at 17.

-11-

However, this could also be due to the fact that she is obese. At this time, it may be difficult for her to hold a job that involves a lot of standing[.]"[30] The ALJ found both of these opinions persuasive[31] and incorporated the limitations regarding plaintiff's ability to stand into plaintiff's RFC with a sit/stand option. But, the ALJ lost sight of and did not deal with the two doctors' opinions as to plaintiff's ability to walk.

The ALJ's explanation as to why he did not find plaintiff as limited as the medical sources did falls short. The ALJ stated that plaintiff's medical record

> shows morbid obesity and mild observed edema, but otherwise limited to no documented treatment and workup for her musculoskeletal complaints.... She also has had normal kidney and liver function tests, and physical examinations documenting normal observations, including no red/edematous joints, no acute distress, 2+ symmetric deep tendon reflexes, supple neck, and no extremity cyanosis, clubbing, edema. . . .[32]

The ALJ concluded that "such evidence does not establish stand/walk abilities that are more limited than found in this decision and a restriction to a light level with a sit/stand option with other non-exertion restrictions as found in this decision adequately account for her

---

[30]Admin. Rec. at 219.

[31]The court is mindful that a chiropractor is not considered an "accepted" medical source but rather is an "other" medical source. That said, in this case, Dr. Lucas' opinion was the only medical opinion in the record from a source who had actually treated plaintiff, albeit briefly, and the ALJ relied on Dr. Lucas' opinion in formulating plaintiff's RFC. Admin. Rec. at 18.

[32]Admin. Rec. at 17-18.

-12-

severe impairments and associated symptoms."[33] But, Dr. Lebeau's standing/walking opinions were not based on plaintiff's musculoskeletal impairment. Rather, he testified that his standing/walking opinions were based on plaintiff's morbid obesity and not her arthritis.[34] Dr. Lucas also suggested that plaintiff's difficulties with walking could be because of her obesity, not the pain in her knees.[35] While, as defendant points out, the ALJ did not find that plaintiff could do a full range of light work because he included a sit/stand option, that limitation cannot be squared with Dr. Lebeau's or Dr. Lucas' opinion about plaintiff's limited ability to walk. Thus, the ALJ's RFC was flawed.

But even if the ALJ erred in finding that plaintiff had the residual capacity to do a reduced range of light work, defendant argues that this error was harmless based on the vocational expert's testimony. At the administrative hearing, plaintiff testified that her main concern was that "I cannot stand on my feet [for] any length of time[,]" but she testified that "I can sit. . . . [T]hat's the one thing I can do."[36] In response, the vocational expert testified "[t]hat would be within the parameters of the job I cited,"[37] which was the scanner job, a job

---

[33]Admin. Rec. at 18.

[34]Admin. Rec. at 33.

[35]Admin. Rec. at 219.

[36]Admin. Rec. at 53.

[37]Admin. Rec. at 53.

-13-

"listed as a light duty job. . . ."[38] Defendant argues that this testimony shows that even if plaintiff's allegations about her ability to walk and stand were credited, she still would have been able to perform her past relevant work as a scanner.

While the vocational expert's testimony does suggest that plaintiff could still work as a scanner if she could not stand for long periods of time, his testimony does not address a limited ability to walk. The vocational expert was never asked if plaintiff would be able to do any of her past relevant work, or other work, if she was limited to walking one hour per day, as Dr. Lebeau opined. The ALJ's error as to plaintiff's RFC was not harmless.

Next, plaintiff argues that the ALJ erred in not considering the medical evidence she offered the day of the administrative hearing. At that hearing, plaintiff told the ALJ that she had some additional medical records to submit and the ALJ told her to give them to the person at the front counter.[39] In his decision, the ALJ stated that the evidence was not admitted for failure to comply with the five-day rule.[40] "Social Security regulations provide that a claimant must inform the ALJ about or submit any written evidence no later than 5 business days before the date of the hearing (the 'five-day rule')." Lena J. v. Comm'r of Soc. Sec., Case No. C18-6007-RBL-BAT, 2019 WL 3291039, at *1 (W.D. Wash. July 1, 2019). "If a claimant does not comply with this requirement, the ALJ 'may decline to consider or

---

[38]Admin. Rec. at 51.

[39]Admin. Rec. at 54-55.

[40]Admin. Rec. at 11.

-14-

obtain the evidence,' unless certain exceptions apply." Id. (quoting 20 C.F.R. §§ 404.935(a), 416.935(a)). These exceptions include if "[o]ur action misled you[.]" 20 C.F.R. § 404.935(b)(1). "If the claimant has missed the deadline because of one of the listed exceptions, the ALJ 'will accept the evidence' if he or she has not yet issued the decision." Lena J., 2019 WL 3291039 at *2 (quoting 20 C.F.R. §§ 404.935(b), 416.1435(b)).

Plaintiff argues that the ALJ improperly invoked the five-day rule because he had misled her into believing that the evidence she submitted the day of the hearing would be considered. Plaintiff argues that when the ALJ told her to give the records to the person at the front counter she thought that meant that the ALJ would consider this evidence.

The ALJ did not err in invoking the five-day rule. The agency did not do anything to lead plaintiff to believe that she could wait until the day of the hearing to present evidence. The hearing notices sent to plaintiff plainly advised her that any evidence had to be submitted five days prior to the hearing.[41]

Plaintiff also argues that the Appeals Council should have considered this evidence because it was in the record prior to the Appeals Council making its decision in January 2020. Plaintiff argues that it is not clear whether the Appeals Council considered this evidence as it is not mentioned in the Notice of Appeals Council Action.[42] The Appeals

---

[41]Admin. Rec. at 90, 110.

[42]Admin. Rec. at 1-3.

Council usually indicates in its notice of decision what additional evidence it considered and there is no indication here that it considered any additional evidence.

"The Commissioner's regulations permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." Brewes v. Comm'r of Social Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012). Plaintiff did not expressly include this evidence with her request to the Appeals Council for review of the ALJ's decision. Thus, plaintiff did not "submit" this evidence to the Appeals Council. As such, the Appeals Council did not err in not considering this evidence.

Because the ALJ's RFC was flawed, the court must consider whether to remand this matter for further administrative proceedings or for an award of benefits. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. The court follows a three-step analysis to determine whether a remand for benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter, 806 F.3d at 495 (quoting Garrison

-16-

v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021)).

Plaintiff argues that a remand for an award of benefits would be appropriate because if Dr. Lebeau's stand/walk opinions are credited as true, she would be limited to sedentary work. And, if she is limited to sedentary work, plaintiff argues that she would be considered disabled by application of Rule 201.02 of the Medical Vocational Guidelines. Rule 201.02 "dictat[es] a finding of disability for a claimant with a residual functional capacity for sedentary work, who is a person of advanced age with limited or less education, and skilled or semi-skilled work experience with no transferable skills[]." Julick v. Colvin, Case No. EDCV 13–874 JC, 2013 WL 6119240, at *4 (C.D. Cal. Nov. 21, 2013).

Plaintiff's Rule 201.02 argument fails because she does not meet all of the requirements. If Dr. Lebeau's opinion were credited as true, she would be limited to

-17-

sedentary work. And, at the time of her application, plaintiff was 61 years old, which is well beyond "advanced age", which is 50 or older. But plaintiff does not have "limited or less" education. Generally, "7th grade through the 11th grade level of formal education is a limited education." 20 C.F.R. § 416.964(b)(3). Plaintiff has a high school education.[43] Thus, she would not be disabled under Rule 201.02 even if Dr. Lebeau's standing/walking opinions were credited as true.

A remand for benefits is not appropriate in this case. Rather, a remand for further proceedings is appropriate because the record needs to be developed as to whether there are jobs which plaintiff could do if she were limited to walking one hour per day as Dr. Lebeau opined.

Conclusion

The final decision of the Commissioner is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 16th day of December, 2020.

/s/ H. Russel Holland<br>United States District Judge

---

[43] Admin. Rec. at 144.